UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| LESLIE COLGROVE, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| vs. ) | CAUSE NO. 3:20-CV-147 RLM |
| ) | |
| ANDREW SAUL, COMMISSIONER ) | |
| OF SOCIAL SECURITY, ) | |
| ) | |
| Defendant ) | |

OPINION AND ORDER

Leslie Colgrove seeks judicial review of the final decision of the Commissioner of Social Security denying her application for disability insurance benefits under the Social Security Act, 42 U.S.C. § 423. The court has jurisdiction over this action pursuant to 42 U.S.C.§§ 405(g). For the following reasons, the court reverses the Commissioner's decision, and remands for further proceedings.

Leslie Colgrove was 46 years old at the alleged onset of disability (July 28, 2016), had at least a high school education, and had previously worked as an emergency medical technician. She applied for disability insurance benefits in February 2017, alleging disability due to a variety of physical and mental impairments. Her application was denied initially, upon reconsideration, and following an administrative hearing in October 2018, at which Ms. Colgrove was represented by counsel.

After hearing testimony from Ms. Colgrove, her spouse, Tara Colgrove, and a vocational expert, Clifford Brady, and reviewing the documentary evidence, the ALJ found that:

- Ms. Colgrove had several severe physical and mental impairments, including: diabetes mellitus, obstructive sleep apnea, back, neck, and shoulder pain, major depressive disorder, bipolar disorder, and anxiety disorder with panic attack; and some non-severe physical impairments, including hypothyroidism, carpal tunnel syndrome (post right carpal tunnel release) and bullous emphysema.

- Her impairments, alone and in combination, didn't meet or equal the severity of any of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., Appendix 1, specifically Listings 1.02 (major dysfunction of a joint), 1.04 (disorders of the spine), 3.0 (chronic respiratory disorders), 12.04 (depressive, bipolar, and related disorders) and 12.06 (anxiety disorders).

- Ms. Colgrove retained the residual functional capacity to perform a limited range of light work, but couldn't perform her past relevant work as an emergency medical technician; and

- Based on the vocational expert's testimony, the claimant's age, education, work experience and RFC, Ms. Colgrove could perform other work that existed in significant numbers in the national

2

>economy, including bench assembler (27,600 jobs), electronics worker (39,300 jobs), and routing clerk (20,500 jobs), and so wasn't disabled within the meaning of the Social Security Act through the date of his decision (January 14, 2019).

When the Appeals Council denied Ms. Colgrove's request for review, the ALJ's decision became the final decision of the Commissioner of Social Security. Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). This appeal followed.

The court's role in reviewing an administrative decision is limited. If the ALJ applied the correct legal standard and substantial evidence supports his factual determinations, those determinations are conclusive. Shideler v. Astrue, 688 F.3d 306, 310 (7th Cir. 2012); Scott v. Astrue, 647 F.3d 734, 739 (7th Cir. 2011). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); Jones v. Astrue, 623 F.3d 1155, 1160 (7th Cir. 2010). A court reviewing an ALJ's decision can't reweigh the evidence, make independent findings of fact, decide credibility, or substitute its own judgment for that of the Commissioner, Simila v. Astrue, 573 F.3d 503, 513 (7th Cir. 2009); Powers v. Apfel, 207 F.3d 431, 434-435 (7th Cir. 2000), but instead must conduct "a critical review of the evidence, considering both the evidence that supports, as well as the evidence that detracts from, the Commissioner's decision." Briscoe v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005). While the ALJ isn't required "to address every

piece of evidence or testimony presented, he must provide a 'logical bridge' between the evidence and the conclusions so that [the court] can assess the validity of the agency's ultimate findings and afford the claimant meaningful judicial review." Jones v. Astrue, 623 F.3d at 1160.

Ms. Colgrove contends that the ALJ's findings regarding the opinions offered by her treating sources (Ms. Benedict and Dr. Utes), her residual functional capacity, and her subjective complaints were insufficient and unsupported by substantial evidence, and asks the court to reverse and remand for further proceedings.

A. *Treating Physicians' Statements*

In June 2017, Patricia Benedict submitted a medical source statement in which she opined that: Ms. Colgrove could rarely lift 10 pounds; could sit, stand, and walk for less than two hours in an 8-hour workday; could handle, finger, reach, and reach overhead bilaterally 10 percent or less of the time, would be absent more than four days a month, would be off task 25 percent of the workday, and was incapable of even "low stress" work. (Exhs. 5F). The statement was co-signed by a Dr. Utes, but there's no indication what relationship Dr. Utes had to Ms. Colgrove or Ms. Benedict.

Ms. Benedict submitted a photocopy of her June 2017 statement in July 2018, with an added handwritten note stating: "No changes, no work as of 7/19/18 PB." (Exh. 14F). Dr. Utes's signature isn't on the July 2018 report.

4

Although the ALJ was informed at the October 2018 administrative hearing that Patricia Benedict was a nurse practitioner and not an M.D., he identified her as Dr. Benedict and "one of the claimant's treating physicians" in his decision, and indicated that he "afford[ed] great weight to [her] opinion because it [was] inconsistent with the objective evidence, including imaging, physical examinations, and mental status examinations." (AR 43). The parties agree that the errors were harmless because a nurse practitioner's opinion isn't entitled to "controlling weight" under 20 C.F.R. § 1527(c), and the ALJ clearly meant to give Ms. Benedict's opinions something less than controlling weight because they were "inconsistent with the objective evidence." But Ms. Benedict offered multiple opinions about Ms. Colgrove's physical and mental limitations, and it's not clear what weight, if any, the ALJ intended to give those opinions, or whether he considered any of the other factors set forth in § 1527(c)(1)-(6), as 20 C.F.R. § 1527(f) required him to do.

Ms. Colgrove contends that the ALJ didn't recognize and address that Dr. Utes signed the June 2017 medical source statement. She argued for the first time on appeal that Dr. Alan Utes was her "treating psychiatrist", and that the ALJ should have addressed all of the factors set out in 20 C.F.R. 1527(c) in determining what weight to afford his opinions, but didn't do so. The record contains no evidence of Dr. Utes's area of expertise or relationship to Ms. Colgrove or Ms. Benedict. There are no treatment records from Dr. Utes and all of Ms.

5

Benedict's records indicate she's both provider and supervisor. Under the the circumstances, the court would be hard-pressed to find that the ALJ erred by failing consider Dr. Utes's credentials in determining what weight to give Ms. Benedict's statements.

B. *Residual Functional Capacity*

In assessing residual functional capacity, the ALJ gave "great weight" to the opinions of the state agency reviewing physicians and psychologists (Exhibits 1A and 3A), and a consulting and examining physician, Dr. Stephen Kennedy (Exhibit 3F). He concluded from that evidence that Ms. Colgrove retained the residual functional capacity to perform light work with the following limitations: she could lift and carry 20 pounds occasionally and 10 pounds frequently; sit for 6 hours, stand for 6 hours, and walk for 6 hours in an 8-hour workday; frequently balance, stoop, kneel, crouch and crawl; occasionally reach overhead bilaterally, climb ramps and stairs, perform simple, routine and repetitive tasks; and occasionally interact with supervisors, coworkers, and the general public; but she couldn't work at unprotected heights, be exposed to moving mechanical parts, or climb ladders, ropes or scaffolds. The ALJ included those limitations in the hypothetical he posed to vocational expert Clifford Brady and relied on Mr. Brady's opinion that Ms. Colgrove could still perform jobs in the national economy with those limitations and given her age, education, and past work experience.

The court agrees with Ms. Colgrove that the ALJ findings aren't supported by the evidence because he didn't consider the combined affect of her impairments or medical opinions that were inconsistent with his findings.

In determining disability, the ALJ must consider the claimant's impairments individually and in combination. *See* SSR 85-28 ("the possibility of several impairments combining to produce a severe impairment must be considered."). The ALJ addressed Ms. Colgrove's impairments individually, but gave little or no consideration to the severity of her impairments when combined, limited his step 3 analysis to her "severe impairments", and didn't consider the affect obesity may have had on her residual functional capacity.

The ALJ's findings about Ms. Colgrove's residual functional capacity were tainted not only by his flawed analysis of Ms. Benedict's statements and the combined affect of her impairments, but by the absence of any explanation of the inconsistencies in the medical opinions he relied upon.

The ALJ found, among other things, that Ms. Colgrove could sit, walk, and stand for up to six ours in an eight hour day, that she could perform "simple, routine, and repetitive tasks" and could "occasionally interact with supervisors, co-workers, and the general public." But Dr. Kennedy opined that she would have some difficulty with walking or standing for extended periods of time and that her mental impairments combined with the pain she was experiencing may be affecting her ability to concentrate and her ability to interact socially (Exh. 3F),

7

and the state agency psychologists concluded that she had moderate limitations in multiple areas, including the ability to understand, remember, or apply information, to interact with others, to concentrate, persist, or maintain pace, and adapt or manage herself. (Exhibits 1A and 3A). The ALJ gave great weight to those opinions, which suggest limitations greater than those identified in his decision, and the ALJ didn't account for those additional limitations or provide an explanation for the apparent inconsistencies. *See* O'Connor-Spinner v. Astrue, 627 F.3d 614, 620 (7th Cir. 2010) ("employing terms like "simple, repetitive tasks" on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace); Stewart v. Astrue, 561 F.3d 679, 684–685 (7th Cir. 2009) (limiting hypothetical to simple, routine tasks did not account for limitations of concentration, persistence and pace); Kelly v. Saul, No. 1:19cv33-PPS, 2020 WL 290080, at *1-2 (N.D. Ind. Jan. 21, 2020) (ALJ's hypothetical and RFC analysis limiting a claimant to "simple, routine, and repetitive tasks; making simple work-related decisions; occasional interaction with supervisors and coworkers, and no interaction with the public" did not sufficiently capture the claimant's "moderate limitation in the ability to carry out very short and simple instructions and in the ability to maintain attention and concentration for extended periods.").

The court takes no position on whether the evidence as a whole is sufficient to support a finding of no disability. It simply concludes that the ALJ didn't build the required logical bridge between his findings and conclusion.

Accordingly, the Commissioner's decision is REVERSED and the case is REMANDED for further proceedings.

SO ORDERED.

ENTERED:   April 13, 2021

/s/ Robert L. Miller, Jr.
Judge, United States District Court